YELK, Appellant, v. YELK, Respondent.

*April 2—April 30, 1963.*

36

For the appellant there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall.*

For the respondent there was a brief by *Clifford & Fitzpatrick,* attorneys, and *William B. Clifford* and *James A. Fitzpatrick* of counsel, all of Watertown, and oral argument by *James A. Fitzpatrick.*

DIETERICH, J.   The order to show cause, with affidavit of Clarence annexed, was filed in the county court of Jefferson county on June 18, 1962, and heard before Honorable CHARLES E. KADING on July 26, 1962, and September 5, 1962.

The pertinent language of the order to show cause reads that:

"It is hereby ordered that the plaintiff, Gladys Yelk, show cause . . . why an order should not be entered authorizing the defendant to deposit the sum of $2,250 with the clerk of the county court for Jefferson county, Wisconsin, and the plaintiff, Gladys Yelk, ordered to accept said sum of $2,250

in exchange for proper conveyances to the six woodlots held in joint tenancy by the parties to the above-entitled action in full satisfaction and compliance with the terms and conditions of the divorce judgment entered in the above entitled case."

The relevant sections of Clarence's affidavit are as follows:

"That your affiant states that because of this litigation and because of other litigation now a matter of record in the courts of Jefferson county, that he is unable to agree at any time with the plaintiff in connection with any disposition of these woodlots because your affiant verily believes that such sale could be consummated only upon terms dictated entirely by her.

"That your affiant states that according to the terms of the judgment of divorce hereinabove referred to, it is not anticipated that the plaintiff was to receive at any time more than $2,250 for her interest in said woodlots, and that it was possible that she would receive a lesser amount if the property was sold at a forced trustee's sale bringing less than $4,500, which would then only entitle plaintiff to half of the net proceeds of said sale.

"That your affiant is ready, willing, and able to pay the sum of $2,250, which is the maximum amount plaintiff could obtain at any time, to the clerk of the county court of Jefferson county, Wisconsin, to be held by him and to be disbursed to plaintiff upon proper order of this court in exchange for conveyances from Gladys Yelk, the plaintiff, to Clarence Yelk, the defendant, in full compliance with said judgment of divorce."

The judgment of divorce was granted by the Honorable L. L. DARLING, judge of the county court of Jefferson county, under date of July 31, 1961.

The trial court determined that under and pursuant to the provisions of sec. 247.26, Stats. 1959,[1] "there will be a

---

[1] "ALIMONY, PROPERTY DIVISION. Upon every judgment of divorce or legal separation for any cause excepting that of adultery committed by the wife, . . . The court may also finally divide and

final division of estate of the parties in accordance with these conclusions of law and that appropriate instruments of conveyance, correctly and properly describing the real estate herein involved, be executed by each of the parties to accomplish the same and to comply with the judgment to be entered herein."

The pertinent provision contained in the property division applicable to this appeal is as follows:

". . . that the additional six woodlots, now held by the parties in joint tenancy shall continue so to be held in joint tenancy until September 1, 1962; if by that time the parties have not been able to dispose of any or all of them, either to one or the other, or to a third party, both parties shall be divested of all right, title, and interest in and to said six woodlots and the title thereto then be vested in a trustee to be named by this court who shall then sell said woodlots to the best advantage and divide the proceeds between the joint tenants, now the owners thereof; in the event that the sale of said six woodlots, after said trustee's fees and expenses are deducted, shall leave a balance in excess of $4,500, the trustee shall pay to the plaintiff $2,250; in the event that the net proceeds of said sale shall net less than $4,500, such balance shall be divided equally between the parties. In the event of the death of either of the joint tenants prior to September 1, 1962, or thereafter while the trust shall continue, each of the joint owners thereof shall have the right to will her or his interest therein, or in the absence of a will or wills, then the proceeds thereof to his or her heirs-at-law."

distribute the estate, both real and personal, of the husband, and so much of the estate of the wife as has been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case; . . . No such judgment shall divest or transfer title to real estate unless such judgment or a certified copy thereof is recorded in the office of the register of deeds of the county in which such real estate is situated."

At the hearing on the order to show cause, Gladys testified that she conveyed to Henry Vogel, her father, by warranty deed, her interest in the six woodlots described in the property division contained in the judgment of the divorce. The recorded deed was offered as plaintiff's Exhibit No. 1, and was received in evidence. The deed recites that it was given for one dollar and other good and valuable consideration and was dated May 23, 1962, and recorded in the office of the register of deeds for Dane county on May 24, 1962. Gladys then identified Exhibit No. 2, which was a check drawn on the Jefferson County Bank under date of May 23, 1962, payable to the order of Gladys Yelk in the amount of $2,250, and signed by Henry Vogel, which recites on the face of the check, "In full payment for deed of May 23, 1962." Gladys testified that the check was received in payment of the six woodlots. Exhibits Nos. 1 and 2 were received in evidence. Counsel for Gladys then made an offer of proof to show that on April 21, 1962, Clarence Yelk, a single man, conveyed to Charles R. Yelk his interest in the woodlots in question. Exhibit No. 3 is a photostatic copy of the original deed recorded in the office of the register of deeds for Dane county. The trial court refused to receive Exhibit No. 3 in evidence.

The Honorable CHARLES E. KADING, in his written decision of August 22, 1962, in determining the related issues raised by the order to show cause, stated:

". . . plaintiff takes the position that both parties have effectively negated the court's plan for the division of this asset of the joint estate of the parties by conveyances of individual interests. This conclusion is even less acceptable. The requirement that the 'joint tenancy continue to be held in joint tenancy' clearly prohibits a separate sale (which would sever the joint tenancy) and take control of the division of this property away from the court. The language 'dispose of them, either to one or the other or to a third

party' implies sale as a whole in a single transaction, necessarily by mutual agreement.

"Sec. 247.375, Stats., would not seem to apply since these woodlots were not awarded to either party. Title to these lots is just where it was. If a certified copy of the judgment was in fact recorded it would divest title only according to the plan as set forth in the decision.

"It is held that the attempted transfers in evidence (or offered in evidence) had no effect. The named grantors were powerless to convey and the particular named grantees are much too close to full knowledge of all the facts as to the incumbrance of this land to qualify as innocent purchasers in due course and without notice."

The trial court then set out a plan whereby each party had the opportunity to submit a sealed bid for the woodlots. Such bid to be accompanied by a deed to his or her interest in said lots. The trial court also stated that:

"The revised plan, incorporated above, is required by the acts of the parties and is justified under the implied power and duty of the court to implement its orders and to prevent their circumvention by wilful and arbitrary acts. There is no revision of the judgment as to the status of the parties after such determination became final."

Clarence deposited with the clerk of Jefferson county court the amount of $2,250 on July 26, 1962, and submitted a bid of $18,500 which was filed September 4, 1962, together with a warranty deed conveying his undivided one-half interest in the joint tenancy to Gladys. Gladys did not submit a bid.

The court by its order dated September 28, 1962, required Gladys to accept the $2,250 deposited with the clerk of court, and to convey her interest in the six woodlots by warranty deed to Clarence.

The sole issue before this court is whether the trial court retained jurisdiction for the purpose of satisfying the condi-

tions of the property division pertaining to the six woodlots, contained in the judgment of divorce.

Gladys contends that the trial court lost jurisdiction over disposition of the woodlots for the reason that the parties had severed the joint tenancy. It is clear from the record that Gladys attempted to sever the joint tenancy. It is likewise clear that the trial court's jurisdiction was to continue until the property was disposed of pursuant to the provisions of the property division contained in the judgment of divorce. It follows that any conveyances made by either Gladys or Clarence to the six woodlots violate the provisions contained in the judgment of the trial court.

Gladys also contends that the judgment allows the parties to sell their interests in the woodlots separately before September 1, 1962. We do not so construe that portion of the judgment for the reason that it is a property division made by the court and the intent of the trial court is quite clear, if a conveyance of the woodlots was made before September 1, 1962, it was to be made jointly and not severally. No division was made. The most Gladys could realize from the sale of the woodlots under the property division made by the trial court was $2,250, and this was accomplished by the bidding mechanics arranged by the trial court. The order of the trial court dated September 28, 1962, is affirmed.

*By the Court.*—Order affirmed.

WILKIE, J., dissents.